UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GEOFFREY RHEA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:13CV1593 TIA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

This cause is on appeal from an adverse ruling of the Social Security Administration.  The

suit involves Application for Disability Insurance Benefits under Title II of the Social Security

Act.  Claimant has filed a Brief in Support of his Complaint, and the Commissioner has filed a

Brief in Support of her Answer.  The parties consented to the jurisdiction of the undersigned

pursuant to 28 U.S.C. § 636(c).

## I.     Procedural History

On January 13, 2011, Claimant Goeffrey Rhea[1] filed an Application for Disability

Insurance Benefits under Title II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr. 191-97).[2]  Claimant

states that his disability began on April 1, 2009,[3] as a result of diabetes and diabetic neuropathy,

---

[1]Claimant Alan W. Rhea died on August 24, 2012, and Geoffrey Rhea has been substituted at the party in this case to pursue benefits on behalf of the deceased.  (Tr. 7-10).

[2]"Tr." refers to the page of the administrative record filed by the Defendant with her Answer (Docket No. 10/filed February 21, 2014).

[3]Although Claimant originally alleged an onset date of April 30, 2007 in his application, at the hearing, he amended his onset date to April 1, 2009.  (Tr. 108, 215).

hepatitis C, cancer post op removed Sigmoid resection to colostomy, depression, arthritis, memory loss, confusion, chronic fatigue, and anxiety. (Tr. 220). On initial consideration, the Social Security Administration denied Claimant's claims for benefits. (Tr. 150-54). Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 156). On March 22, 2012, a hearing was held before an ALJ. (Tr. 41-69, 122-40). Claimant testified and was represented by counsel. (Id.). Vocational Expert Gerald Belchick also testified at the hearing. (Tr. 135-40, 182-83). Thereafter, on May 10, 2012, the ALJ issued a decision denying Claimant's claims for benefits. (Tr. 105-14). After considering the representative's brief, the Appeals Council found no basis for changing the ALJ's decision on June 11, 2013. (Tr. 1-6, 11-12, 14-19, 297-302). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

### A. Hearing on March 22, 2012

#### 1. Claimant's Testimony

At the hearing on March 22, 2012, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 121-35). At the time of the hearing, Claimant was fifty-nine years of age. He has a BA degree in communications. (Tr. 122).

The ALJ noted Claimant worked as a consultant, director of information, systems network analyst, and a senior analyst. (Tr. 122). He worked at BJC Healthcare as a senior analyst II from June 28 through September 16, 2010, but he was not retained for employment during the probation period. (Tr. 123). He testified that the official document "mentioned specifically that I could not multitask and that I was unable to fulfill my assignments, poor performance." (Tr.

129).  He further testified that he was told he could not prioritize and follow through on his assignments, and he missed five meetings.  (Tr. 130).  In 2009, he worked at Advocate Counseling, as a database and general consultant, and his job duties included going out on assignments for clients.  (Tr. 123).  This job ended when he made a mistake during an assignment with a client.  (Tr. 124).  In 2008, he worked for a professional medical and surgical supply company for a couple months, but he was terminated for being a poor performer.  (Tr. 124).

Claimant started collecting unemployment benefits in 2010 but the benefits ended in March 2012.  (Tr. 124).  He acknowledged that when he applied for unemployment benefits, he indicated he was ready, willing and able to go to work.  (Tr. 125).

Claimant has a past history of colon cancer since 2006, and he was diagnosed with diabetes in 1998.  (Tr. 125).  He has had numbness in his feet for the past two to three years.  (Tr. 125).  He testified that he experiences pain in the small of his back based on activity.  He has been diagnosed with hepatitis C, and he tried to go through the interferon treatment in 2004.  (Tr. 126).  He has been diagnosed with early cirrhosis and admitted he sometimes has used alcohol to self-medicate his depression.  He testified he has not used alcohol in over a year.  (Tr. 127).  He has a colostomy, and Dr. Baker is his primary care doctor.  Dr. Baker has never referred him for treatment by a psychiatrist, and Dr. Baker has never prescribed any medications for psychological conditions.  (Tr. 127).  Dr. Baker has prescribed a handicapped placard for his diabetic neuropathy of his feet and the loss of his large toenail.  (Tr. 134).

Claimant testified that he has accidents with the colostomy when it becomes overfilled or breaks loose and requiring him to have unexpected bathroom breaks.  (Tr. 128).

Dr. Guarino, a pain specialist at Washington University, treats him at the pain management

clinic. (Tr. 131). Claimant testified that Dr. Guarino indicated that he might benefit from a steroid injection in his hip on October 13, 2011. He stopped drinking in August 2007 when he was diagnosed with hepatitis C. (Tr. 131). He fractured his right toe causes a problem walking distances and creates a stabbing pain. (Tr. 132). The last time he experienced this problem was on December 20, 2011 after he walked 150 yards. (Tr. 132). Claimant testified how taking Vicodin helps numbs the pain and works 100% of the time. (Tr. 133). He takes medication for diabetes. (Tr. 133).

Claimant testified that he naps two to three times a day. (Tr. 133). He on occasion uses a cane for balance. (Tr. 135).

## 2. Testimony of Vocational Expert

Vocational Expert Gerald Belchick testified at the hearing. (Tr. 135-40). Mr. Belchick cited his past relevant work to include a consultant position, a light, skilled occupation; a director of information service systems, a skilled occupation and generally performed at the sedentary level; and a network analyst and a senior analyst, a light exertional job. (Tr. 136-37).

The ALJ asked Mr. Belchick to assume that

> a hypothetical claimant, age 56 is the amended onset date with 16 years of education. Same past work experience. It's been opined this hypothetical claimant can lift and carry 20 pounds occasionally, 10 pounds frequently; stand or walk for six hours out of eight, sit for six; can occasionally climb stairs and ramps, never ropes ladders, and scaffolds; occasional balance; and should not perform any work with direct contact to or with food products. Given those restrictions and those alone, could this hypothetical claimant return to any past, relevant work?

(Tr. 136).

The ALJ next asked Mr. Belchick the following:

... it's 10 pounds occasionally, less than 10 pounds frequently, stand or walk for two hours out of eight, sit for six, everything else stays the same. It appears from what you've told me that the director of information would be applicable as far as its customarily performed in the national economy and described in the DOT. Would that be fair?

(Tr. 137). Mr. Belchick indicated that would be fair but not as described by Claimant. (Tr. 137).

Counsel asked Mr. Belchick to assume as follows:

The hypothetical would be age 56; he can lift 10 pounds; he has to alternate sitting and walking; cannot sit for more than 30 minutes; needs to walk in order to go to bathroom breaks; and may not be -- maybe need to lie down two times a day. Do you have any jobs that he can do?

(Tr. 138). Mr. Belchick indicated no if the individual had to lay down three times during a work day for extended periods other than the regular scheduled breaks. (Tr. 139). Mr. Belchick opined that if the individual had to take unscheduled rest breaks repeatedly over the course of a work day, this restriction would pretty much eliminate all work. When asked if the individual would be off task for 20 percent of the work day, Mr. Belchick responded this would eliminate all work. (Tr. 139).

### 3. Forms Completed by Claimant

In the undated Disability Report - Adult, Claimant reported completing a continued education in technologies on October 15, 2009. (Tr. 219-228).

In the Function-Report Adult, Claimant reported looking for employment as a daily activity. (Tr. 258). On a regular basis, he goes to church and visits his sister in the nursing home. (Tr. 262). He reported being able to use the computer for ninety minutes at a time. (Tr. 267).

## III. Medical Records and Other Records

To obtain disability insurance benefits, Claimant must establish that he was disabled within the meaning of the Social Security Act not later than the date his insured status expired -

September 30, 2014. <u>Pyland v. Apfel</u>, 149 F.3d 873, 876 (8th Cir. 1998) ("In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status."); <u>see also</u> 42 U.S.C. §§ 416(I) and 423(c); 20 C.F.R. § 404.131.

On October 23, 2006, Dr. George Morgan performed a colon cancer screening and diagnosed Claimant with colon polyps and performed a colonoscopy. (Tr. 361, 374-). On November 30, 2006, Dr. Louis Montana performed a sigmoid colon partial resection secondary to a cancerous colon polyp. (Tr. 364). In follow-up treatment, he complained of abdominal distention and shortness of breath. (Tr. 369). He was assessed with post colon resection for adenocarcinoma of the colon now complicated by an anastomotic leak with peritonitis. (Tr. 370). In the Surgical Pathology Report, the final pathologic diagnosis was descending colon polyp, proximal sigmoid colon polyp, and rectal biopsy. (Tr. 451-55).

The November 22, 2006 x-ray of his chest showed blunting of posterior costophrenic angle compatible with pleural reaction or small effusion. (Tr. 459).

On November 30, 2006, Dr. Montana performed a laparoscopic sigmoid colon resection. (Tr. 715-19).

On December 12, 2006, Dr. Montana performed an exploratory laparotomy, colon resection, and colostomy to repair the anastomotic leak and peritonitis. (Tr. 303). He presented to the emergency room with a history of abdominal pain, distention, and shortness of breath. (Tr. 376). Dr. Montana noted a colostomy was fashioned in the left side of his abdominal wall. (Tr. 303). The surgical report included the final pathologic diagnosis of sigmoid colon and acute serositis, pericolic hemorrhage and acute inflammation. (Tr. 457). He had a prolonged intubation related to his morbid obesity and severity of his illness as he developed moderate-to-severe

- 6 -

systemic inflammatory response syndrome with renal insufficiency, electrolyte abnormalities, and hypotension. (Tr. 393). The December 20 CT pulmonary angiogram showed no definite CT evidence for pulmonary embolism, a small right pleural effusion with compressive atelectasis, ascites, and left lower posterior pleural calcification. (Tr. 473-74). On December 26 rehab assessed Claimant for his need for services and placement prior to discharge. (Tr. 376). His past medical history included obesity, obstructive sleep apnea, diabetes mellitus, hepatitis C, and renal insufficiency related to diabetes. Neurological examination showed him to be alert and oriented x3, in no acute distress, and his mood and affect to be appropriate. (Tr. 376). On December 29, 2006, he was discharged to home and advised to call immediately if any further progression of shortness of breath or abdominal pain, but he developed significant shortness of breath and readmitted. (Tr. 386, 394). His discharge diagnosis was anastomotic leak from prior colon resection site, acute peritonitis, morbid obesity, non-insulin dependent diabetes mellitus, hypertension, and chronic active Hepatis C. (Tr. 393).

Claimant presented to the emergency room on December 30, 2006 complaining of a fever and abdominal pain. (Tr. 378, 380). After treatment with a neubulizer, he had excellent improvement in his breathing , and he reported feeling much better. (Tr. 379). He also received Tylenol and IV fluids and was admitted to undergo a formal CT imaging of his abdomen to more clearly delineate the abnormalities identified. (Tr. 379). Claimant reported being recently divorced and experiencing recent anxiety. (Tr. 380). CT of his chest showed a pelvic fluid collection requiring drainage. (Tr. 381). The CT of his abdomen and pelvis substantial ascites about the right lobe of the liver, and the liver to be cirrhotic, and multiple large fluid collections in the abdomen. (Tr. 481-82). In the January 2, 2007 consultation, Dr. Norman Aliga

recommended a short stay in acute rehab for gradual upgrade of his endurance, mobility, and self-care skills.  (Tr. 386-87).  He was discharged from the hospital on January 3 after having supportive respiratory therapy and continued with diuresis therapy and transferred to the Marianjoy Hospital.  (Tr. 402).

On January 3, 2007, Claimant was admitted to Marianjoy Rehabilitation Hospital for acute inpatient rehabilitation after being diagnosed with colon cancer and having a post resection with colostomy.  (Tr. 310).  He reported no pain in his abdomen.  (Tr. 310).  Dr. Padma Srigiriraju decided to initiate acute inpatient, neuromuscular rehabilitation with physical therapy to work on transfers, gait training, and bed mobility, and occupational therapy to work on upgrading self-care skills.  (Tr. 312).  On January 6, he reported feeling stronger and wanting to go home soon.  (Tr. 315).  On January 10, Dr. Srigiriraju decided to transfer Claimant to Edward Hospital for further evaluation of his high fevers and possible drainage of his abdominal and pelvic abscesses.  (Tr. 323).

On January 10, 2007, Dr. Michael Peters admitted Claimant because of recent complicated history and his recurrent fever.  (Tr. 389).  His assessment included recurrent fever with abnormal urinalysis and recurrent dyspnea.  (Tr. 391).  On consultation of intra-abdominal abscess infection, Dr. Jonathon Pinsky recommended a CT guided drainage and antibiotic therapy.  (Tr. 395-96). On January 11, Dr. Paul Backas performed a CT guided placement of 8 French all purpose drainage catheter into his left lower quadrant abscess.  (Tr. 487).

He was admitted to Edwards Hospital on January 10, 2007 and diagnosed as having a fluid collection and abdominal abscess with perforated viscus.  (Tr. 339, 399).  Treatment included a CT guided drain placed in the largest abscess cavity of his abdomen and immediate

purulent return was obtained. (Tr. 399). He reported working in an office and having mild arthritis related to pain in the knee joints. (Tr. 341). Claimant has a history of sigmoid colon cancer, and he had a laparoscopic resection of the colon followed by complications with abdominal fluid collection and abscesses for which he was hospitalized and had abdominal abscess drainage. (Tr. 342). By January 19, he was feeling well, strong, and participating in rehab relatively well. (Tr. 400).

On January 17, 2007, Dr. Christopher Parnell recommended acute inpatient rehabilitation, Claimant was transferred back to Marianjoy Hospital. (Tr. 340). Claimant refused physical therapy and occupational therapy evaluation. (Tr. 397). He was discharged to home in good condition on January 27. (Tr. 352). Dr. Srigiriraju found his functional abilities on discharge to be independent with eating, bed mobility, grooming, and bathing, and his ambulation without the need of an assistive device or rolling walker, and he is able to weight bear as tolerated. (Tr. 352). Dr. Srigiriraju found his final diagnosis to be "[a]ctivities of daily living and mobility dysfunction secondary to multiple abdominal abscesses status post abdominal drain, all secondary to colon cancer." (Tr. 353).

The January 30, 2007, CT of his abdomen and pelvis revealed resolution of bilateral pleural effusions, both lung bases fully and normally aerated, near complete resolution of left lateral abdominal abscess, near complete resolution of fluid collection lateral to the right colon, multiple small low CT density lesions within liver most likely small cysts, and resolution of subcutaneous edema compared to previous study. (Tr. 496-98).

In the May 7, 2007 treatment note, Claimant reported recently losing his job and having psychosocial stressors. (Tr. 621).

In follow-up treatment on August 23, 2007, he reported right hip pain increasing with movement, feeling more depressed, and needing a renewal of handicapped placard. (Tr. 568). Dr. Peters continued his medication regimen. (Tr. 568).

In the April 29, 2008 report of his wellness examination, Dr. Peters noted the colostomy to be still present. (Tr. 601). The mental examination showed his mood, affect, mentation, and speech to be normal. (Tr. 603). Dr. Peters extended his "best wishes for ongoing good health." (Tr. 604).

In follow-up treatment on January 2, 2009, Claimant reported left flank/abdominal pain. (Tr. 572). Examination showed his affect to be normal and appropriate. (Tr. 572).

The January 8, 2009 image of his lumbar spine showed mild degenerative changes. (Tr. 612).

In the March 9, 2009 Linden Oaks Psychiatric Evaluation, depression, alcoholism, and marijuana abuse are listed as the reasons for his admission. (Tr. 501). Claimant reported having a family intervention and struggling with depression and alcoholism throughout his life and starting treatment to address his issues. He comes from an abusive family, has been divorced twice, and has had addiction issues since he was very young. He became an opium seeker after his mother gave him opium at age six for tummy aches. At age twelve, he started consuming alcohol and at age fifteen, he started actively using marijuana almost on a daily basis. Claimant reported marijuana is still his drug of choice, but he is currently consuming alcohol because he is unable to obtain marijuana. He uses alcohol on a daily basis and drinks until passing out. He admitted to being depressed after his divorce and having low motivation, low energy, mood swings, irritability, impulsivity. He denied having any past psychiatric history and reported as his medical

history having arthritis, hypertension, and diabetes type 2. He has been unemployed since January 2009. (Tr. 501). In the assessment, Dr. Asmat Jafry found Claimant to have bipolar II disorder, most recent depressed, alcohol dependence and marijuana abuse and recommend he continue Partial Hospital Program and prescribed medications. (Tr. 501-02). In the discharge summary, Dr. Jafry noted how Claimant was admitted to the program for treatment of alcohol dependence, blood pressure, and marijuana abuse. Dr. Jafry found Claimant able to develop effective coping skills to deal with his depression, mood swings, and sleep problems. Dr. Jafry noted how his mood and affect gradually improved after starting trazodone. Dr. Jafry advised him to follow up with an outpatient psychiatrist and therapist after discharge and to attend AA and NA meetings. (Tr. 502).

On March 26, 2009, Dr. Peters completed a wellness examination, and Claimant reported feeling generally well and not having any "major, current health concerns to discuss." (Tr. 574). His shoulder has been flaring with arthritic symptoms but his treatment options are limited by his chronic hepatitis. Claimant reported "working on establishing a new work field." (Tr. 574).

In the April 2, 2009 report of his wellness examination, Dr. Peters noted how Claimant was feeling generally well and had no major, current health concerns to discuss. (Tr. 606). The mental examination showed his mood, affect, mentation, and speech to be normal. (Tr. 608). Dr. Peters prescribed an acetaminophen-free pain reliever for his arthritic symptoms. (Tr. 609).

Dr. Peters discussed his medications during treatment on April 13, 2009. (Tr. 577). His main complaints were heel spur on his right foot, left shoulder pain, and difficulty in coordination. He reported his hip areas have been painful but stable overall. (Tr. 577).

The July 16, 2009 image of his right foot showed moderate spurring and a healed fracture.

(Tr. 614).

On July 29, 2009, Claimant received treatment by Dr. Aaron Bare for left shoulder pain on referral by Dr. Peters. (Tr. 582). He reported symptoms starting two years earlier. Examination showed a full range of motion of his cervical spine without reproducing shoulder pain. Examination of his left shoulder revealed pain occurring at end ranges of abduction and with reaching over ninety degrees. (Tr. 582). Dr. Bare recommended a left shoulder MRI to evaluate the integrity of the rotator cuff. (Tr. 583).

On September 16 and 21, October 27, and December 28, 2010, Dr. Gregory Baker treated Claimant and referred him to Dr. Anthony Guarino for treatment of right hip pain and left rotator cuff pain. (Tr. 507-13). He reported having a hard time walking and having a history of neuropathy. (Tr. 510). During treatment in October, Dr. Baker noted sleep disturbance and depression as well as unemployment and financial concerns. (Tr. 508). Dr. Baker prescribed medications as treatment. During treatment in December, he reported foot, hip, and shoulder pain and taking Wellbutrin and Norco. (Tr. 507).

On December 16, 2010, Claimant sought new treatment for hepatitis C, nonresponder on referral by Dr. Baker. (Tr. 524). He reported being under a lot of stress after losing his job recently and becoming divorces and doing minimal exercise. He has lost twenty pounds in last six weeks due to low finances. (Tr. 524). Chronic hepatitis, early cirrhosis, and suggestive of steatohepatitis are listed in the final diagnosis. (Tr. 549).

On January 12, 2011 on referral by Dr. Baker, Dr. Anthony Guarino completed an evaluation at the Pain Management Center. (Tr. 514). Claimant reported having multiple medical problems and psychosocial stressors including being broke and selling off his possessions. Dr.

Guarino noted his greatest pain is sensed in his right hip, and he was diagnosed with osteoarthritis in the hip many years ago. He reported taking one Norco a day controls his pain and enables him to function. He reported never being treated by an orthopaedic surgeon, and he has never had an injection as treatment. His second greatest pain is sensed in his left rotator cuff starting years ago after a fall. His home exercise program with bands helps him tolerate the symptoms. (Tr. 514). The January 9, 2009 x-ray of his hip showed mild degenerative changes, and no evidence of occult fracture or other significant abnormality. (Tr. 515, 612). The January 8, 2009 x-ray of his lumbar spine showed mild disc space narrowing at L5-S1, and no evidence of compression or spondylolisthesis/spondylosis. (Tr. 515, 613). Dr. Guarino observed how Claimant did not exhibit pain behavior. (Tr. 515). Dr. Guarino listed in his impression osteoarthritis, torn rotator cuff/shoulder enthesopathy, and painful diabetic peripheral neuropathy. (Tr. 516). Dr. Guarino noted how it would be difficult to treat Claimant except for his basic medical care until his financial situation improves and decided to control his symptoms with one Norco a day. (Tr. 516). Dr. Guarino observed Claimant to have a normal affect. (Tr. 517).

In follow-up treatment on January 31, 2011, Dr. Bacon noted likely cirrhosis, uncontrolled diabetes mellitus, and obesity and still unemployed. (Tr. 552-54).

In the March 17, 2011 Physical Residual Functional Capacity Assessment, Dr. John Jung listed diabetes II, poor control, oral medication as his primary diagnosis, and exogenous obesity, history of colon cancer s/p colostomy no recurrence, osteoarthritis, mild right hip, history of rotator cuff tear left, conservative treatment, hepatitis C, mildly active, and history of substance and alcohol abuse. (Tr. 727). Dr. Jung found Claimant can occasionally lift twenty pounds, frequently lift ten pounds, stand/walk about six hours in an eight-hour workday, sit about six

hours in an eight-hour workday, and unlimited lift/carry. (Tr. 728). Dr. Jung found his functional limitations to include never balancing and occasionally climbing and stooping. (Tr. 729). Dr. Jung found no manipulative, visual, communicative, or environmental limitations to be established. (Tr. 729-30).

On April 8, 2011, Dr. Mades completed a psychological evaluation on referral by disability determinations. (Tr. 740-45). Claimant drove to the examination and presented a Missouri driver's license and reported last working in September 2010 as a senior analyst at BJC Healthcare. (Tr. 740). At the examination, Claimant complained of a history of colon cancer in 2006 and problems with concentration and attention to detail. (Tr. 740). He indicated that he has been self-medicating with alcohol and having problems with depression for several years. (Tr. 741). He started drinking again in September after eighteen months of sobriety. Dr. Mades noted how Claimant received inpatient treatment in 2009 at Linden Oaks Hospital for substance abuse, but he has not received any treatment since that time. (Tr. 741). Dr. Mades observed his mood to be slightly depressed and his affect to be slightly restricted and generally appropriate. (T. 743). He reported his activities of daily living to include taking care of the household chores and being able to drive. (Tr. 744). He spends time watching television, some light reading, thinking of ways to make ends meet, playing the guitar, and checking his email. Dr. Mades noted how he was able to maintain adequate attention and concentration with appropriate persistence and pace during the examination. Dr. Mades made the diagnosis of depressive disorder, alcohol abuse in partial remission, moderate psychosocial and environmental problems, limited support system, financial stress, and unemployment. (Tr. 744). Dr. Mades found his prognosis to be fair with appropriate intervention and abstinence from substance abuse. (Tr.745).

In the April 21, 2011 Psychiatric Review Technique, Dr. Alan Aram found his affective disorders not to severe. (Tr. 748). Dr. Aram found Claimant to be mildly limited in his ability in maintaining social functioning and concentration, persistence, or pace. (Tr. 756). Dr. Aram noted how a typical day for Claimant includes looking for employment, preparing simple meals, watching television, and using the internet. (Tr. 758). Dr. Aram noted how the medical record does not contain records showing psychiatric prescriptions or treatment. Dr. Aram found his allegations to be partially credible "in that he is probably minimizing the effects of his DAA(drug addiction and alcoholism)." (Tr. 758).

On June 2, 2011, Dr. Baker, as Claimant's treating physician, completed a Medical Source Statement opining Claimant is not capable of performing sustained sedentary work or sustained light work on a regular basis. (Tr. 761-62). Dr. Baker further found that even if Claimant had the freedom to alternate sitting and standing during the work day, he still could not perform sedentary or light work. (Tr. 762). Dr. Baker found Claimant to be severely limited in his ability to maintain attention and concentration for extended periods, to perform activities within a schedule, and to complete a normal workday and work week without interruptions from medically based symptoms. (Tr. 763). Dr. Baker noted due to his past injury, he does not have the ability to remember basic job functions and has difficulties concentrating for long periods of time. (Tr. 764).

Dr. Baker also completed a Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment opining Claimant cannot sit, stand, or walk on a regular and continued basis during a work day due to his arthritic hips, and he cannot lift any weight on a regular and continuing basis during a workday because of his torn rotator cuffs. (Tr.

767).  With respect to limitations on reaching, handling, and feeling, Dr. Baker found his torn rotator cuffs preclude him from performing such activities.  (Tr. 768).

On August 15, 2011, Mark Tobin, a licensed professional counselor, completed a Mental Residual Functional Capacity Questionnaire after one session for evaluation.  (Tr. 796).  Mr. Tobin found Claimant has severe social and work impairments, financial problems, and unable to afford medications.  (Tr. 796).  Mr. Tobin found he has chronic, severe depression lasting for years, suicidal ideation, and diminished ability to concentrate.  (Tr. 796).  Mr. Tobin opined Claimant is unable to meet the competitive standards in remembering work-like procedures, understand and remember simple instructions, maintain attention for two-hour segments, maintain regular attendance, complete a normal workday, perform at a consistent pace without an unreasonable number of rest periods, and deal with normal work stress.  (Tr. 798).  In support, Mr. Tobin cited how he has impaired concentration, chronic depression, and suicidal ideation.  (Tr. 798).  Mr. Tobin noted how Claimant's impairments would cause him to miss work more than four days a month.  (Tr. 800).

On September 1, 2011, Claimant presented to the emergency room arriving ambulatory via walking from home reporting he is bleeding from his stoma.  (Tr. 789).  He was treated with silver nitrate and discharged to home.  (Tr. 790-91).

On October 13, 2011, Claimant presented to the emergency room reporting he "thinks he contracted e-coli," and he is "more tired, body aches and my kidneys are not processing well because a[*sic*] drank a lot but only a little urine."  (Tr. 772).  Claimant was diagnosed with a viral infection and hyperglycemia and treated with a medication regimen.  (Tr. 776, 781).

On January 9, 2012, Claimant reported having bilateral feet pain r/t diabetic neuropathy

and having a previous fracture in his right foot. (Tr. 793). He also has bilateral knee pain and hip pain. He is still selling his possessions to make ends meet, and he is trying to get disability. His last office visit to the pain management center was a year earlier. He usually takes one Hydrocodone tablet a day but his prescription expired in October. (Tr. 793). Psychiatric examination by Dr. Guarino showed Claimant to have normal orientation and his memory intact, normal mood and affect, and normal insight and judgment. (Tr. 795).

Claimant sought treatment in the emergency room on June 7, 2012. (Tr. 67-98). After his colon surgery, he reported he had some memory loss and was not able to continue in his job. (Tr. 68). The psychiatric examination showed Claimant not to be depressed or anxious. (Tr. 74). He received treatment for dehydration and was reminded to increase his fluids. (Tr. 76). His discharge diagnosis included weakness generalized, hyperglycemia, chronic renal insufficiency, history of colon cancer, and diabetes mellitus type 2 in obese. (Tr. 93).

On June 14, 2012, Claimant presented in the emergency room complaining of weakness for last several months and experiencing dyspnea on exertion, chest pain, and shortness of breath. (Tr. 25, 29). He was seen in the emergency room a couple days earlier for dehydration. (Tr. 29). He returned because he is not feeling better, and he does not have a primary care physician. (Tr. 29). He reported a history of hepatitis C, but he failed interferon treatments. (Tr. 26). Neurologic examination showed Claimant to be alert and oriented x3. (Tr. 27). Dr. Shiv Patil found Claimant to have weakness caused by multiple factors including possibly uncontrolled diabetes mellitus, anemia, and cirrhosis of liver, renal failure, and dyspnea. (Tr. 28). Neurological examination showed he is alert and oriented to person, place, and time, and his affect to be normal. (Tr. 32). In the Clinical Impression, Dr. Patel listed general weakness,

anemia, acute renal failure, hyperkalemia, and dehydration.  (Tr. 34).  He reported not having

income inasmuch as his unemployment benefits ran out a few months earlier.  (Tr. 35).      Noting

how he had not been scoped after treatment of colon cancer, Dr. Patel scheduled a colonoscopy.

(Tr. 35, 40, 46).  The colonoscopy revealed non-thrombosed external hemorrhoids, polyps in the

sigmoid colon, and mild diversion colopathy in the sigmoid/rectum.  (Tr. 100-04).  An

echocardiogram revealed mild mitral regurgitation.  (Tr. 51).

On June 22, 2012, Claimant received follow-up treatment with Dr. Seema Iyer after being

hospitalized for treatment after falling down the stairs.  (Tr. 20).  He reported feeling better after

coming home from the hospital, but he has been feeling drained and exhausted.  He was diagnosed

with non-alcoholic cirrhosis of the liver two weeks earlier and with hepatitis C cirrhosis.  Claimant

also presented with the diagnosis of iron deficiency anemia due to chronic blood loss.  Dr. Iyer

noted his diabetes with renal manifestations to be not stated as uncontrolled, and his compliance

with treatment has been fair.  (Tr. 20).  Claimant reported being manic depressive and swinging

back from the winter doldrums.  (Tr. 21).  He reported being retired and his prior occupation was

a computer programmer.  (Tr. 22).

## IV.  The ALJ's Decision

The ALJ found that Claimant meets the insured status requirements of the Social Security

Act on Apri1, 2009, and he remained insured throughout the period of this decision.  (Tr. 110).

Claimant has not engaged in substantial gainful activity since April 1, 2009, the amended alleged

onset date.  The ALJ found that the medical evidence establishes that Claimant has the severe

impairments of diabetic foot neuropathy, degenerative disc and joint disease, colostomy, hepatitis

C, and obesity, but no impairment or combination of impairments listed in, or medically equal to

one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 110-11). The ALJ found that Claimant has the residual functional capacity to lift or carry twenty pounds occasionally and ten pounds frequently, sit six hours in an eight-hour workday, and stand and/or walk six hours in an eight-hour workday, and occasionally balance as well as climb stairs or ramps, but he should not climb ladders, ropes or scaffolds, and his work must not involve direct contact with food products. (Tr. 112). Claimant is able to perform his past relevant work since April 1, 2009. (Tr. 113). The ALJ concluded that Claimant has not been disabled since April 1, 2009. (Tr. 114).

## V.     Discussion

In a disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for

disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-42 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts

from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).  The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1.  The credibility findings made by the ALJ.

2.  The claimant's vocational factors.

3.  The medical evidence from treating and consulting physicians.

4.  The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5.  Any corroboration by third parties of the claimant's impairments.

6.  The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "if it is supported by substantial evidence on the record as a whole." Wiese v. Astrue , 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008)).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion."  Wiese, 552 F.3d at 730 (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)).  When reviewing the

record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. Id. The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730. Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000). See also Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant contends that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ in formulating the RFC improperly evaluated the medical evidence by erroneously weighing the medical opinions and failed to properly assess his credibility.

A.      Residual Functional Capacity and Credibility Determination

A claimant's RFC is what he can do despite his limitations. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001). The claimant has the burden to establish his RFC. Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). The ALJ determines a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); Eichelberger, 390 F.3d at 591; 20 C.F.R. § 404.1545(a). The ALJ is "required to consider at least some supporting evidence from a [medical

professional]" and should therefore obtain medical evidence that addresses the claimant's ability to function in the workplace. Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. Id.

The ALJ found that Claimant has the residual functional capacity since April 1, 2009 to lift or carry twenty pounds occasionally and ten pounds frequently; sit six hours in an eight-hour day, stand and/or walk a total of six hours in an eight-hour work day; and occasionally balance as well as climb stairs, but he should not climb ladders, ropes or scaffolds and his work must not involve direct contact with food products.

The undersigned will begin with a review of the ALJ's credibility determination. See Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005) (it is clearly established that, before determining a claimant's RFC, the ALJ must first evaluate the claimant's credibility).

The Eighth Circuit has recognized that, due to the subjective nature of physical symptoms, and the absence of any reliable technique for their measurement, it is difficult to prove, disprove or quantify their existence and/or overall effect. Polaski, 739 F.2d 1321-22. In Polaski, the Eighth Circuit addressed this difficulty and set forth the following standard:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional restrictions.

Id. at 1322.

A claimant's complaints of pain or symptoms "shall not alone be conclusive evidence of disability ... there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques." Travis v. Astrue, 477 F.3d 1037, 1042 (8th Cir. 2007) (citing 42 U.S.C. § 423(d)(5)(A). An ALJ may not disregard subjective complaints merely because there is no evidence to support them, but may disbelieve such allegations due to "inherent inconsistencies or other circumstances." Id. (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)); see also Polaski, 739 F.2d at 1322 (although the ALJ may not accept or reject the claimant's subjective complaints based solely upon personal observations, he may discount such complaints if there are inconsistencies in the evidence as a whole). The "crucial question" is not whether the claimant experiences symptoms, but whether his credible subjective complaints prevent him from working. Gregg v. Barnhart, 354 F.3d 710, 713-14 (8th Cir. 2003). The credibility of a claimant's subjective testimony is primarily for the ALJ, not this Court, to decide, and this Court considers with deference the ALJ's decision on the subject. Tellez, 403 F.3d at 957. When an ALJ considers the Polaski factors and discredits a claimant's subjective complaints for a good reason, that decision should be upheld. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001).

In his decision the ALJ thoroughly discussed the medical evidence of record, his lack of functional restrictions by any physicians, his ability to respond to questions at the hearing, the gap in medical treatment, receipt of unemployment benefits, and his daily activities. See Gray v. Apfel, 192 F.3d 799, 803-04 (8th Cir. 1999) (ALJ properly discredited claimant's subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and extensive daily activities). The lack of objective medical

basis to support Claimant's subjective descriptions is an important factor the ALJ should consider

when evaluating those complaints.  See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)

(lack of objective findings to support pain is strong evidence of lack of a severe impairment);

Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled to find that the

absence of an objective medical basis to support claimant's subjective complaints was an

important factor in evaluating the credibility of her testimony and of her complaints).  The ALJ

noted that although Claimant asserts that he is unable to work due to foot numbness, back pain,

fatigue, and a need for unexpected bathroom breaks, the clinical and objective medical findings

are inconsistent with an individual experiencing totally debilitating symptomatology.  In support,

the ALJ cited to the treatment notes of record and the gap in medical treatment.[4]  The ALJ then

addressed other inconsistencies in the record to support his conclusion that Claimant's complaints

were not credible.

Specifically, the ALJ noted that no treating physician in any treatment notes stated that

Claimant was disabled or unable to work or imposed significant long-term physical and/or mental

limitations on Claimant's capacity for work.  See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir.

2000) (significant that no examining physician submitted medical conclusion that claimant is

disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508

---

[4]Although Claimant argues in his Brief he could not afford more frequent medical treatment
due to lack of finances and insurance, the record is devoid of any evidence suggesting that
Claimant sought any treatment offered to indigents.  See Nelson v. Sullivan, 966 F.2d 363, 367
(8th Cir. 1992)(holding the mere use of nonprescription pain medication is inconsistent with
complaints of disabling pain); Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir. 1992)(finding it
is inconsistent with the degree of pain and disability asserted where no evidence exists that
claimant attempted to find any low cost medical treatment for alleged pain and disability).
Likewise, the record is devoid of any evidence showing that Claimant had been denied medical
treatment or access to prescription pain medications on account of financial constraints.  See
Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994).

(8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). The absence of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints). Further, the ALJ noted that Claimant's subjective complaints were not supported or consistent with the clinical signs, symptoms, and findings of the objective medical evidence of record. During treatment on January 11, 2011 , Dr. Guarino observed how Claimant did not exhibit pain behavior.

In addition, the ALJ noted that no physician had ever made any medically necessary restrictions, restrictions on his daily activities, or functional limitations. Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir. 1996) (lack of significant medical restrictions imposed by treating physicians supported the ALJ's decision of no disability). Likewise, the ALJ noted how the medical record is devoid of any evidence showing that Claimant's condition has deteriorated or required aggressive medical treatment. Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek aggressive medical care is not suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993)( lack of ongoing treatment is inconsistent with complaints of disabling condition). As noted by the ALJ, the medical records show that Claimant was diagnosed with hepatitis C in the 1970s and his neuropathy in January 2007, but he continued

to engage in substantial gainful activity despite them. Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that his suggested impairments were not as severe as he alleged); Weber v. Barnhart, 348 F.3d 723, 725 (8th Cir. 2003) (noting that claimant left her job due to lack of transportation, not due to disability).

The ALJ also properly considered the inconsistencies between Claimant's allegations and his activities. The ALJ noted that Claimant lives independently, takes care of household chores, cooks, drives, grocery shops, and plays the guitar. See Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001) ("[i]nconsistencies between subjective complaints of pain and daily living patterns diminish credibility"); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (affirming ALJ's discount of claimant's subjective complaints of pain where claimant was able to care for one of his children on daily basis, drive car infrequently, and go grocery shopping occasionally). Further, the ALJ noted how the shopping is inconsistent with his assertion of an inability to walk a long distance as well as his assertion of difficulty in standing and lifting objects. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("The ALJ may discount subjective complaints of physical and mental health problems that are inconsistent with medical reports, daily activities, and other such evidence."); See Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (finding that activities such as driving, shopping, watching television, and playing cards were inconsistent with the claimant's complaints of disabling pain). The undersigned further notes Claimant reported looking for

employment[5], watching television, and using the internet during treatment.

The ALJ next noted how the medical record shows a gap in treatment from April 2009 until August 2010[6] undermines Claimant's credibility concerning his disabling impairments. Edwards v. Barnhart, 314 F.3d 964, 968 (8th Cir. 2003) (claimant's failure to pursue regular medical treatment detracted from credibility). Such gap suggests that Claimant's subjective complaints of disabling pain are not entirely credible. See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995) (citing Benskin v. Bowen, 830 F.2d 878, 884) (8th Cir. 1987) (holding that the "claimant's failure to seek medical treatment for pain" is a legitimate factor for an ALJ to consider in rejecting a claimant's subjective complaints of pain). "[T]he failure to seek medical treatment for such a long time during a claimed period of disability tends to indicate tolerable pain." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995); see Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 1994) (holding that infrequent treatment is a basis for discounting subjective complaints). The most recent medical images of his lumbar spine showed mild degeneration and of his right toe showed moderate spurring and a healed fracture.

---

[5]The record shows Claimant reported during treatment that he was looking for work. A Claimant's search for employment during a claimed period of disability is a factor the ALJ can properly consider in determining credibility. See House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007) (holding that the claimant's looking for work was inconsistent with a claim of disability); Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006) (listing factors supporting ALJ's credibility finding); Goff, 421 F.3d at 792 ("Inconsistencies between [a claimant's] subjective complaints and [his] activities diminishes [his] credibility); Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995) ("[T]he record of contemplating work [including applying for jobs related to and unrelated to his previous work] indicates [the claimant] did not view his pain as disabling.").

[6]In relevant part, the ALJ opined "[t]he medical record does not show that the claimant made any visits to a physician or any other treating source during the April 2009 to August 2010 period." (Tr. 112). As noted by counsel, the ALJ also indicated how "he did not seek physician intervention during the April 2007[sic] August 2010 period" when discussing treatment sought for his hepatitis C and neuropathy.

The ALJ further noted how the evidence also establishes that Claimant received unemployment benefits from 2010 through March 2012. A claimant who applies for unemployment compensation benefits holds herself out as available, willing, and able to work. See Mo Rev. Stat. § 288-040(1)-(2). Because such application necessarily indicates an ability to work, it is evidence that weighs against an applicant's claim that she was disabled. See Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991). A claimant who applies for unemployment compensation benefits holds herself out as available, willing, and able to work. Because such application necessarily indicates an ability to work, it is evidence which negates Claimant's claim that he was disabled. See Black v. Apfel, 143 F.3d 383, 387 (8th Cir. 1998) (applying for unemployment compensation is evidence negating a claimant's claim of disability); Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991); see also Salts v. Sullivan, 958 F.2d 840, 846 n. 8 (8th Cir. 1992) ("[I]t is facially inconsistent for [a claimant] to accept unemployment compensation while applying for social security benefits."). At the hearing, he acknowledged that when he applied for unemployment benefits, he indicated he was ready, willing and able to go to work. Receipt of unemployment benefits after the Claimant stopped working is a fact inconsistent with an inability to work.

Next, the ALJ evaluated other inconsistencies in the record including Claimant's reports regarding alcohol consumption. Although he testified that he has not consumed alcohol in the past year, the ALJ noted how the medical record refutes this testimony. Contradictions between a claimant's sworn testimony and what he actually told physicians weighs against the claimant's credibility. Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006) (finding a lack of credibility when claimant's testimony regarding drinking consumption conflicted with medical

documentation).  The undersigned notes how Dr. Aram found his allegations to be partially

credible "in that he is probably minimizing the effects of his DAA(drug addiction and

alcoholism)."  As such, the undersigned finds that the ALJ's consideration of the discrepancies

between his testimony and what he told doctors is supported by substantial evidence.

Claimant also testified at the hearing that he on occasion uses a cane and takes two to

three times a day, but there is no objective medical evidence substantiating Claimant's need to use

a cane or take two to three naps a day.  See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004)

(whether there is a need to lie down is a medical question requiring medical evidence; record did

not contain any evidence that medical condition required claimant to lie down for hours each day).

The ALJ noted how no doctor determined Claimant needed to use a cane as a medical necessity.

Further, the record shows Claimant never reported to any doctors his need to use a cane. Thus, if

Claimant was not using a cane out of medical necessity, he must be doing so out of choice.  See

Craig v. Chater, 943 F. Supp. 1184, 1188 (W.D. Mo. 1996); Cf.  Harris v. Barnhart, 356 F.3d

926, 930 (8th Cir. 2004) (whether there is a need to lie down is a medical question requiring

medical evidence; record did not contain any evidence that medical condition required claimant to

lie down for hours each day).

Further, the ALJ noted Claimant was fully responsive to questions at the hearing.  "[An]

ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in

making credibility determinations."  Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) ((holding

that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant

during his testimony); Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) ("The ALJ's

personal observations of the claimant's demeanor during the hearing [are] completely proper in

making credibility determinations"). See also Lamp v. Astrue, 531 F.3d 629, 632-33 (8th Cir. 2008) (holding that in assessing the plaintiff's allegations of lack of concentration, an impaired memory, and depression, the ALJ properly combined his review of the record with his personal observations); Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir. 1993) (observation by the ALJ that claimant had not appeared uncomfortable at the hearing was properly considered as detracting from claimant's credibility). The ALJ's observations of a claimant's appearance and demeanor during the hearing is consideration in making the credibility determination. Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during his testimony); Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations); Jones v. Callahan, 122 F.3d 1148, 1151 (8th Cir. 1997) ("When an individual's subjective complaints of pain are not fully supported by the medical evidence in the record, the ALJ may not, based solely on his personal observations, reject the complaints as incredible."). Here, the ALJ combined his review of the record as a whole with his personal observations. As such, the Court finds that the ALJ's decision in this regard is based on substantial evidence on the record as a whole.

After engaging in a proper credibility analysis, the ALJ incorporated into Claimant's RFC those impairments and restrictions found to be credible. See McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003) (the ALJ "properly limited his RFC determination to only the impairments and limitations he found credible based on his evaluation of the entire record."). The ALJ determined that the medical evidence supported a finding that Claimant could perform his past relevant work. The vocational expert testified in response to hypothetical questions, that

incorporated the same limitations as the RFC, and opined that such individual could perform work as a consultant, director of information systems, and a network analyst.

As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied relief solely on the lack of objective medical evidence to support his finding that Claimant is not disabled. Instead, the ALJ considered all the evidence relating to Claimant's subjective complaints, including the various factors as required by Polaski, and determined Claimant's allegations not to be credible. Although the ALJ did not explicitly discuss each Polaski factor in making his credibility determination, a reading of the decision in its entirety shows the ALJ to have acknowledged and considered the factors before discounting Claimant's subjective complaints. See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). Inasmuch as the ALJ expressly considered Claimant's credibility and noted numerous inconsistencies in the record as a whole, and the ALJ's determination is supported by substantial evidence, such determination should not be disturbed by this Court. Id.; Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996). Because the ALJ gave multiple valid reasons for finding Claimant's subjective complaints not entirely credible, the undersigned defers to the ALJ's credibility findings. See Guilliams v. Barnhart, 393 F.3d 798, 801(8th Cir. 2005).

The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before him and set out the inconsistencies detracting from Claimant's credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ pointed out inconsistencies in the record that tended to militate against the Claimant's credibility. See Guilliams, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is

supported by good reasons and substantial evidence). Those included the medical evidence of record, his lack of functional restrictions by any physicians, his ability to respond to questions at the hearing, the gap in medical treatment, his receipt of unemployment benefits, and his daily activities. The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992). Accordingly, the ALJ did not err in discrediting Claimant's subjective complaints of pain. See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001)(affirming the ALJ's decision that claimant's complaints of pain were not fully credible based on findings, inter alia, that claimant's treatment was not consistent with amount of pain described at hearing, that level of pain described by claimant varied among her medical records with different physicians, and that time between doctor's visits was not indicative of severe pain).

The substantial evidence on the record as a whole supports the ALJ's decision. Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992)).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

B.    Weight Given to Treating Doctor

The undersigned finds that the ALJ considered Dr. Baker's opinions set forth in the June 2, 2011 Medical Source Statement and the Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment and gave no and little weight to his opinions in his written opinion as follows:

> Dr. Baker's opinions are not given any weight, not only because psychological functioning is outside a physician's realm of expertise, but also because the record does not show he ever evaluated the claimant's mental status, and per the claimant's testimony, Dr. Baker never referred him to a mental health professional, or even prescribed him psychotropic medication.

***

> [Dr. Baker's] opinions are given little weight because the doctor's records did not show he ever performed a musculoskeletal examination of the claimant.... They are also grossly inconsistent with the remainder of the medical record, as well as the claimant's activities of daily living.

(Tr. 111, 113) (internal citation omitted).

"A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. §404.1527(d)(2) (alteration in original). "[W]hile a treating physician's opinion is generally entitled to substantial weight, such an opinion does not automatically control because the [ALJ] must evaluate the record as a whole." Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007) (internal quotations omitted). Thus, "'an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record.'" Id. (quoting Prosch v. Apfel, 201 F.3d 1010, 1013-14 (8th

Cir. 2000)).

A treating physician's opinion may be, but is not automatically, entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2). Controlling weight may not be given unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. SSR 96-2P, 1996 WL 374188 (July 2, 1996). Even a well-supported medical opinion will not be given controlling weight if it is inconsistent with other substantial evidence in the record. Id. "The record must be evaluated as a whole to determine whether the treating physician's opinion should control." Tilley, 580 F.3d at 679. When a treating physician's opinions "are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight." Halverson v. Astrue, 600 F.3d 922, 930 (8th Cir. 2010( (quoting Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)). "A treating physician's opinion does not automatically control, since the record must be evaluated as a whole." Perkins v. Astrue, 2011 WL 3477199, *2 (8th Cir. 2011) (quoting Medhaug v. Astrue, 578 F.3d 805, 815 (8th Cir. 2009)). The ALJ is charged with the responsibility of resolving conflicts among the medical opinions. Finch v. Astrue, 547 F.3d 933, 936 (8th Cir. 2008).

Additionally, Social Security Ruling 96-2p states in its "Explanation of Terms" that it "is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, at *2 (S.S.A. July 2, 1996). SSR 96-2 clarifies that 20 C.F.R. §§ 404.1527 and 416.927 require the ALJ to provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." Id. at *5.

In the June 2, 2011 Medical Source Statement, Dr. Baker opined Claimant is not capable of performing sustained sedentary work or sustained light work on a regular basis. Further, Dr. Baker found Claimant to be severely limited in his ability to maintain attention and concentration for extended periods, to perform activities within a schedule, and to complete a normal workday and work week without interruptions from medically based symptoms. Dr. Baker noted due to his past injury, he does not have the ability to remember basic job functions and has difficulties concentrating for long periods of time. In the Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment, Dr. Baker opined Claimant cannot sit, stand, or walk on a regular and continued basis during a work day due to his arthritic hips, and he cannot lift any weight on a regular and continuing basis during a workday because of his torn rotator cuffs. With respect to limitations on reaching, handling, and feeling, Dr. Baker found his torn rotator cuffs preclude him from performing such activities.

Although a treating physician's opinion is often given "controlling weight," such deference is not appropriate when the opinion is "inconsistent with other substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)). The record as a whole in this case, including the inconsistencies in Dr. Baker's treatment notes and his function assessment, casts doubt on his assertions that Claimant could not perform any kind of sustained full-time competitive employment.

First, to the extent Dr. Baker opined that Claimant is disabled and incapable of performing any competitive employment, a treating physician's opinion that a claimant is not able to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988,

994 (8th Cir. 2005); House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007) (A physician's opinion

that a claimant is "disabled" or "unable to work" does not carry "any special significance,"

because it invades the province of the Commissioner to make the ultimate determination of

disability).  The ALJ acknowledged that Dr. Baker was a treating source, but that his opinions

were not entitled to controlling weight because they are inconsistent with the objective medical

evidence in the record.  See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the

doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can

accord it less weight.").  The undersigned notes that Dr. Baker's opinions are also inconsistent

with his own treatment notes inasmuch as he never found such functional or mental limitations

during treatment nor did he ever perform a musculoskeletal examination of Claimant or refer him

to a psychiatrist for evaluation and treatment.  The record shows Dr. Baker treated Claimant on

four occasions, September 16 and 21, October 27, and December 28, 2010, and his treatment

notes consist of four pages with brief notations.  (Tr. 507-13).

Dr. Baker last treated Claimant five months before completing the function and mental

assessments, but he did not report the conditions and symptoms that he claims render him totally

disabled.   During treatment, Claimant reported having a hard time walking and a hard time

remembering things and depression, but Dr. Baker did not refer him for psychiatric treatment.

The ALJ acknowledged that Dr. Baker was a treating source, but that his opinions were

not entitled to controlling weight, because they were inconsistent with the objective medical

records.  The undersigned notes no examination notes accompanied the June 2 assessments.

Opinions of treating doctors are not conclusive in determining disability status and must be

supported by medically acceptable clinical or diagnostic data.  Chamberlain v. Shalala, 47 F.3d

1489, 1494 (8th Cir. 1995); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to an opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion).

Second, Dr. Baker's opinions are inconsistent with his clinical treatment notes. Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009). "It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes," id., or when it consists of conclusory statements, Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010). See also Clevenger v. S.S.A., 567 F.3d 971, 975 (8th Cir. 2009) (affirming ALJ's decision not to follow opinion of treating physician that was not corroborated by treatment notes); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) ("The weight given a treating physician's opinion is limited if the opinion consists only of conclusory statements."). Dr. Baker's opinions are not supported by his treatment notes and are conclusory. See McCoy v. Astrue, 648 F.3d 605, 617 (8th Cir. 2011) (rejecting claimant's challenge to lack of weight given treating physician's evaluation of claimant's mental impairments when "evaluation appeared to be based, at least in part, on [claimant's] self-reported symptoms, and, thus, insofar as those reported symptoms were found to be less than credible, [the treating physician's] report was rendered less credible."). At the hearing, Claimant testified that Dr. Baker, his primary care doctor never referred him for treatment by a psychiatrist, and Dr. Baker had never prescribed any medications for psychological conditions. An ALJ may "discount or even disregard the opinion of a treating physician ... where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000); Hackler v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her

RFC assessment, controlling weight is not given to the RFC assessment). The ALJ properly accorded Dr. Baker's opinions in the assessments no to little weight inasmuch as his findings were inconsistent with, and unsupported by, the evidence of record. See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.") (citation and internal quotation omitted). A review of his treatment notes shows he never imposed any functional or mental limitations or any work restrictions on Claimant. See Fischer v. Barnhart, 56 F. App'x 746, 748 (8th Cir. 2003) ("in discounting [the treating physician's] opinion, the ALJ properly noted that ... [the treating physician] had never recommended any work restrictions for [the claimant]"). Dr. Baker's treatment notes do not reflect the degree of limitation he noted in his June 2, 2011 assessments. The relevant lack of supporting evidence includes the absence of any restrictions placed on Claimant by Dr. Baker during his treatment of him. See Teague v. Astrue, 638 F.3d 611, 615 (8th Cir. 2011). The undersigned concludes that the ALJ did not err in affording no to little weight to Dr. Baker's opinions of June 2, 2011.

The undersigned finds Dr. Baker's opinions are "inconsistent with other substantial evidence." On March 26, 2009 during treatment, Claimant reported feeling generally well and not having any "major, current health concerns to discuss" and "working on establishing a new work field." On April 2, 2009, Dr. Peters noted how Claimant was feeling generally well and had no major, current health concerns to discuss. The mental examination showed his mood, affect, mentation, and speech to be normal. On July 29, 2009, examination by Dr. Bare showed a full range of motion of his cervical spine without reproducing shoulder pain. During treatment on January 12, 2011, Claimant reported having multiple medical problems and psychosocial

stressors including being broke and selling off his possessions and taking one Norco a day controls his pain and enables him to function. The January 9, 2009 x-ray of his hip showed mild degenerative changes, and no evidence of occult fracture or other significant abnormality. Dr. Guarino observed how Claimant did not exhibit pain behavior and to have a normal affect. On April 8, 2011, Dr. Mades noted how Claimant received inpatient treatment in 2009 at Linden Oaks Hospital for substance abuse, but he has not received any treatment since that time and observed his mood to be slightly depressed and his affect to be slightly restricted and generally appropriate. Dr. Mades found he was able to maintain adequate attention and concentration with appropriate persistence and pace during the examination, and his prognosis to be fair with appropriate intervention and abstinence from substance abuse.

Further, no examining physician in any treatment notes stated that Claimant was disabled or unable to work or imposed mental limitations on Claimant's capacity for work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). The absence of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. Renstrom, 680 F.3d at 1065; Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints). Thus, the

ALJ did not err in giving no to little weight to Dr. Baker's opinions.  Renstrom,  680 F.3d at 1065

(ALJ properly gave treating physician's opinion non-controlling weight when that opinion was

largely based on claimant's subjective complaints and was inconsistent with other medical

experts).  As such, the undersigned finds that the ALJ gave proper weight to Dr. Baker's opinions.

Claimant also contends the ALJ erred in rejecting counselor Tobin's opinions inasmuch as

his opinions were wholly based on his allegations. The undersigned finds that the ALJ properly

discounted Mr. Tobin's opinions because he relied on Claimant's subjective reports during the

one-time evaluation at the behest of counsel.  See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir.

2007) (holding that the opinion of a consulting examiner may be given little weight if it is based

largely on the subjective complaints of a claimant found not to be credible).  See also McCoy, 648

F.3d at 617 (holding ALJ did not err in discrediting mental RFC assessment of neurologist that

was based, "at least in part, on [claimant's] self-reported symptoms" which had been "found to be

less than credible.").  Likewise, Mr. Tobin's opinion may properly be discounted for an additional

reason.  A licensed professional counselor, provisional or not, is not an acceptable medical source.

See 20 C.F.R. §§ 404.1513(a) (defining who is an acceptable medical source).  Although a

counselor, which is Mr. Tobin's profession, may be an "other medical source," see 20 C.F.R. §

404.1513(d), Mr. Tobin saw Claimant only once at the behest of counsel, saw him only for an

evaluation, and noted his only source of information for the evaluation was Claimant and not on a

review of any treatment records.  See McCoy, 648 F.3d at 616-17 (finding that ALJ had not erred

by discrediting claimant's treating physician's findings about claimant's functional limitations

when those findings were based on the claimant's "self-reported symptoms."); Vester v. Barnhart,

416 F.3d 886, 890 (8th Cir. 2005) (rejecting licensed professional counselor's assessment that

claimant's disability was caused by mental health issues and not alcoholism - counselor was not acceptable medical source).

The undersigned finds that the ALJ's determination is supported by substantial evidence on the record as a whole. "It is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (citation omitted). "If after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefits." Id. (quoting Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996)). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

C.    New Evidence Before the Appeals Council

Without making specific citations to the additional medical records, Claimant contends that the new and material evidence undermines the ALJ's findings. (Tr. 5, 14-104, 297-302). The Appeals Council stated that it had considered the additional evidence and determined that it did not provide a basis for changing the ALJ's decision.

The regulations provide that the Appeals Council must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision. 20 C.F.R. § 404.970(b); Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000). Additional evidence submitted to the Appeals Council is material when it is "relevant to the claimant's condition for the time period for which benefits were denied." Lamp v. Astrue, 531 F.3d 629, 632 (8th Cir. 2008) (quoting Bergmann v. Apfel, 207 F.3d 1065, 1069 (8th Cir. 2000)). The newly submitted evidence becomes part of the administrative record, even though the evidence was not originally included in the ALJ's record. Cunningham, 222 F.3d at 500. This Court does not review the Appeal Council's denial but determines whether the record as a whole, including the new evidence, supports the ALJ's determination. Cunningham, 222 F.3d at 500.

The Eighth Circuit interprets a statement by the Appeals Council that additional evidence "did not provide a basis for changing the ALJ's decision" as a finding that the additional evidence in question was not material. Aulston v. Astrue, 277 F. App'x 663, 664 (8th Cir. 2008) (citing Bergmann, 207 F.3d at 1069-70) (noting that whether additional evidence meets criteria of materiality is a question of law that courts review de novo).

Although the Appeals Council denied Claimant's request for review without comment, records reflect that the Appeals Council received the additional records; that it made them part of the record; that it considered the records; and that it concluded that the records did not provide a basis for changing the decision of the ALJ. (Tr. 1-5, 14-104, 297-302). In finding the additional medical records did not provide a basis for changing the ALJ's decision, it noted how the records reflect medical treatment Claimant received after the ALJ issued his decision, and therefore the records do not affect the ALJ's decision about whether he was disabled beginning on or before

May 10, 2012.  Accordingly, the Court concludes that the medical records submitted to the Appeals Council address Claimant's condition and document his medical treatment received after the ALJ issued his decision.  See e.g. Roberson v. Astrue, 481 F.3d 1020, 1026 (8th Cir. 2007) (finding no error in Appeals Council's decision that new records prepared seven months after ALJ's decision described claimant's condition on date records were prepared, not on earlier date, and consequently were not material).  The Regulations provide that an application is effective through the date of the ALJ's decision.  20 C.F.R. § 404.620.

While there is evidence to support a contrary result, the ALJ's determination is supported by substantial evidence on the record as a whole.  "It is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo."  Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (citation omitted).  "If after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefits."  Id. (quoting Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996)).  Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that  the final decision of the Commissioner denying social security benefits be **AFFIRMED**. Judgment shall be entered accordingly.

_____/s/ Terry I. Adelman_____
UNITED STATES MAGISTRATE JUDGE

Dated this   5th   day of February, 2015.